## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| WILLIAM E. JANNISCH,<br><br>Plaintiff,<br><br>vs.<br><br>LEROY KIRKEGARD, et al.,<br><br>Defendants. | CV 16-00061-H-DLC-JTJ<br><br><br>FINDINGS AND RECOMMENDATIONS OF<br>UNITED STATES MAGISTRATE JUDGE |

Plaintiff William Jannisch filed a Complaint under 42 U.S.C. § 1983 alleging Defendants violated his rights under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act (RLUIPA) 42 U.S.C. § 2000, et seq when they confiscated and destroyed his property without due process of law and thus impeded his religious practice.  (Complaint, Doc. 2.)  He also filed three motions for injunctive relief.  (Docs. 7, 23, 36.)  Defendants have filed a motion for summary judgment arguing that Mr. Jannisch failed to exhaust his administrative remedies with regard to these issues.  (Doc. 29.)[1]

---

[1]On August 7, 2017, Mr. Jannisch filed a sur-reply (Doc. 35) which has not been considered in the analysis of Defendants' motion.  Local Rule 7.1(d)(1)(D) provides that no further briefing is allowed after the filing of a reply without prior leave of court.  Mr. Jannisch did not obtain leave to file a sur-reply.

Having considered the parties' arguments and submissions, the Court finds that Defendants have not met their burden of demonstrating that administrative remedies were available and that Mr. Jannisch failed to properly utilize those remedies. The Motion for Summary Judgment (Doc. 29) should be denied. The motions for injunctive relief should also be denied.

## I.   ALLEGATIONS

Although a number of other facts and allegations have been raised during the course of this litigation, the issue raised in Mr. Jannisch's Complaint is whether Defendants violated his First and Fourteenth Amendment rights to free exercise of religion and due process of law when they confiscated and destroyed his property on June 6, 2016. (Complaint, Doc. 2 at 6.)

Defendants discuss prior confiscations of property in their statement of undisputed facts and Mr. Jannisch raises issues regarding subsequent confiscations of property, but the issue before the Court is the June 6, 2016 confiscation. Mr. Jannisch has not moved to amend his Complaint to raise additional claims and the Court is not inclined to allow any such amendments.

Therefore, the following issues are pending:

(1)     Whether the June 6, 2016 confiscation and subsequent destruction of

        Mr. Jannisch's property violated his right to procedural due process

2

as protected by the Fourteenth Amendment to the United States

Constitution;

(2)     Whether the June 6, 2016 confiscation and subsequent destruction of

Mr. Jannisch's property violated his right to free exercise of religion

as protected by the First Amendment to the United States

Constitution; and

(3)     Whether the MSP Policy 5.5.4 is unconstitutional in that it allows

hobby materials to be confiscated and destroyed without due process

of law.  (Complaint, Doc. 2 at 6-8.)

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard

Summary judgment is appropriate if there is no genuine issue of material

fact and the movant is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(a).

The party moving for summary judgment has the initial burden of showing there is

no genuine issue of material fact.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970).  If the moving party makes a prima facie showing that summary judgment

is appropriate, the burden shifts to the opposing party to show the existence of a

genuine issue of material fact.  *Id*.  On summary judgment, all inferences should be

drawn in the light most favorable to the party opposing summary judgment.  *Id*. at

159.

A fact is material if it might affect the outcome of the suit under the
governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A
dispute about a material fact is genuine "if the evidence is such that a reasonable
jury could return a verdict for the nonmoving party."  *Id.*

By notice provided on June 30, 2017 (Doc. 32), Mr. Jannisch was advised
of the requirements for opposing a motion brought pursuant to Rule 56 of the
Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th
Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

### B.  Facts[2]

On December 16, 2015, Mr. Jannisch attended an orientation class at the
Montana Department of Corrections' Martz Diagnostic Intake Unit, where he was
instructed on several MSP rules and procedures, including, but not limited to,
those pertaining to property, hobby, searches, classifications, reclassifications,
disciplinary, rules and regulations, levels of infractions, appeals, grievance,
grievable issues, non-grievable issues, and emergency grievances.  (Statement of
Undisputed Fact ("SUF"), Doc. 31 at ¶ 1.)  He then signed an Orientation

---

[2]The facts are taken from Defendants' Statement of Undisputed Facts.  Since Mr.
Jannisch did not file a Statement of Disputed Facts, the facts as presented by Defendants are
deemed admitted pursuant to Local Rule 56.1(d).

Acknowledgment Form confirming he attended the orientation and understood he was responsible for following and adhering to Montana State Prison's ("MSP") rules and policies during his incarceration.  (SUF, Doc. 31 at ¶ 2.)

In the months following Mr. Jannisch's orientation, he acquired a hobby permit, pursuant to MSP Policy 5.5.4, which allowed him to possess craft supplies for the sole purpose of manufacturing hobby-related items.  (SUF, Doc. 31 at ¶ 3.) Soon after acquiring a hobby permit, Mr. Jannisch began manufacturing hobby items that he intended to use for his own personal religious practice.  (SUF, Doc. 31 at ¶ 4.)

At approximately 9:15 a.m. on June 6, 2016, MSP personnel searched Mr. Jannisch's cell and removed several items, including beads, feathers in excess of Mr. Jannisch's religious allowance, leather items crafted from altered "High Yard" gloves, etc.[3]  At the time, Mr. Jannisch did not have a hobby permit to possess beads and excess feathers.  He was also not authorized to alter prison-owned leather gloves.  As a result, the items were removed from Mr. Jannisch's cell,

---

[3]The June 6, 2016 Summary Action/Cell Search/Property Receipt indicates the following property was removed from Mr. Jannisch's cell on June 6, 2016: 1 multi colored baby type blanket, 1 versa beading loom in black zip storage bag, 1 red leather beaded sachel made from a leather glove marked high yard, 5 small beaded pieces of red leather made from the fingers of a glove marked high yard, 1 spool of beading string, 6 tubes of misc. colored beads, 5 med. baggies misc colored beads, 1 square of blue velvet type cloth, 1 wood 2 piece dream catcher, 2 round beaded earrings, 1 feather beaded earring, 1 black feather, 4 strips of bead work, and 3 watch band pins in small baggie.  (Doc. 2-1 at 2.)

marked as contraband, and recorded on a Summary Action/Cell Search/Property Receipt form.  (SUF, Doc. 31 at ¶ 28.)  Mr. Jannisch signed the June 6, 2016 Summary Action/Cell Search/ Property Receipt form.  (SUF, Doc. 31 at ¶ 29.)

At approximately 5:20 p.m. on June 6, 2016, MSP staff again searched Mr. Jannisch's cell and found an electric razor which appeared to be altered.  (SUF, Doc. 31 at ¶¶ 30, 31.)  Allegedly, the locking mechanism on the razor contained small abrasions and the razor's motor had been "shimmed" into place with a folded piece of toilet paper or paper towel.  (SUF, Doc. 31 at ¶ 32.)  Staff completed a Summary Action form stating the altered razor had been confiscated and that Mr. Jannisch would receive a disciplinary hearing. (SUF, Doc. 31 at ¶ 33.)  On June 15, 2016, the Disciplinary Hearings Officer found Mr. Jannisch not guilty and ordered that the razor be returned to him because "[e]vidence shows that the razor came from Virginia that way." (SUF, Doc. 31 at ¶ 34.)

On June 14, 2016, Mr. Jannisch submitted an informal request asking that all items taken from his cell on June 6th be returned and not destroyed.  On June 20, 2016, Defendant Kremer denied the request, stating, "These items were removed and a summary action given.  By signing the summary action you were giving up your right to a hearing.  If this is not the case resubmit and I will investigate further." (SUF, Doc. 31 at ¶ 35.)

6

On June 20, 2016, Mr. Jannisch resubmitted his informal request, but did not refute that he had signed the summary action.  As such, Defendant Kremer denied the request, stating, "The items were taken as hobby and per policy have been destroyed.  Your cell had a number of illeagal (sic) items that you were not allowed.  You gave up your right to a hearing when you signed the summary action."  (SUF, Doc. 31 at ¶ 36.)

### C.  Discussion

The Prison Litigation Reform Act ("PLRA")'s exhaustion requirement states:

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Exhaustion is mandatory. *Booth,* 532 U.S. at 741; *Jones v. Bock*, 549 U.S. 199, 211 (2007).  Under the PLRA, prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at

218.

The defendant bears the ultimate burden of proving failure to exhaust.  *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005).  If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014).  Once the defendant has carried that burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile."  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (citing *Booth*, 532 U.S., at 737–738.) Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'"  *Id.* at 1859 (quoting *Booth*, 532 U.S., at 738, 121 S.Ct. 1819.)

There are three general situations that can render a prison or jail grievance

8

process unavailable to an inmate.  First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.  In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.*  "When rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted).  However, the procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning.  *Id.*  Therefore, when an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion.  *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief.  *Id.* at 1860.  For example, if the prison improperly processed an inmate's grievance, if prison officials

9

misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172-73; *see also McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (holding that an inmate's fear of retaliation may suffice to render the grievance process unavailable, if the prisoner (1) "provide[s] a basis for the court to find that he actually believed prison officials would retaliate against him if he filed a grievance," and (2) "demonstrate[s] that his belief was objectively reasonable"). If a prisoner has failed to exhaust available administrative remedies, the appropriate remedy is dismissal without prejudice. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003), *overruled in part on other grounds by Albino*, 747 F. 3d 1162.

Defendants argue that Mr. Jannisch waived his ability to contest the property seizures at issue when he signed the summary action form on June 6, 2016. Although it is undisputed that Mr. Jannisch signed the June 6, 2016 Summary Action/Cell Search/Property Receipt, it is not clear that by signing that document Mr. Jannisch waived his right to due process. In his June 20, 2016 informal resolution form, Mr. Jannisch indicated that he "signed summary for property receipt not destroy." (Doc. 31-1 at 40.) The form itself is entitled "Summary Action/Cell Search/Property Receipt." (Doc. 2-1 at 2.)

10

In addition, there is no indication on the form that by signing it Mr. Jannisch was consenting to the destruction of his property.  The form does not indicate that summary action (disposal) would take place.  The columns on the form signed by Mr. Jannisch on June 6, 2016, for "summary action or hearing?" were left blank. When Mr. Jannisch's property was confiscated on April 25, 2016, the form signed by Mr. Jannisch indicated that his property was to be mailed out.  The June 6, 2016 form makes no indication whether Mr. Jannisch was agreeing to summary action (disposal of the property), whether he was requesting a hearing, or whether, as he contends, he was simply signing a property receipt. There was also no indication as to why Mr. Jannisch's property was seized.

When "rules are so confusing that no reasonable prisoner can use them" or if grievances are improperly processed then administrative remedies are no longer available.  *Ross*, 136 S.Ct. at 1859; *Albino*, 747 F.3d at 1172-1173.  This is such an instance.  The Court does not find that Mr. Jannisch's signature on the summary action/cell search/property receipt was a clear waiver of his due process rights and thus, administrative remedies were effectively unavailable.  Defendants' motion for summary judgment should be denied.

## III.   OCTOBER 24, 2016 MOTION FOR INJUNCTIVE RELIEF

Defendants represent in their response to Mr. Jannisch's October 24, 2016

11

motion for injunctive relief that, [u]pon information and belief, all items taken from Plaintiff's cell on June 6, 2016, have been destroyed pursuant to the prison's Contraband Policy." (Doc. 19 at 14.) As such, Mr. Jannisch's October 24, 2016 motion for injunctive relief to stop the destruction of his property is moot. Sgt. Kremer's response to Mr. Jannisch's June 20, 2016 informal resolution form indicated the property was destroyed sometime in June 2016. The motion should be denied as moot.

## IV.   MARCH 20, 2017 AND AUGUST 11, 2017 MOTIONS FOR INJUNCTIVE RELIEF

In his second motion for temporary restraining order and preliminary injunction, Mr. Jannisch seeks an order to stop the "continued outbursts of religious retaliation, religious hate crime actions, religious discrimination, against and interfearance [sic] with Native American Indian ceremonies and practices." (Doc. 23 at 1.) In his third motion for temporary restraining order he seeks an order to stop Defendants from confiscating his religious and hobby items. (Doc. 36 at 3.)

In his second motion, Mr. Jannisch alleges that on February 28, 2017, the Religious Activities Director, Terrie Stefalo confiscated his beaded medicine bag. (Doc. 23.) In his third motion, he alleges a correctional officer allowed him to use

a piece of cloth for a hobby project but on August 3, 2017, he received a write-up indicating his hobby project was not legal because he had used the piece of cloth previously approved.  (Doc. 36.)

The individuals involved in these alleged acts of retaliation are not defendants in this action.  Courts are generally unable to issue orders against individuals who are not parties to a suit pending before it. *Zenith Radio Corp v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969); *Zepeda v. United States Immigration Service*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim; it may not attempt to determine the rights of persons not before the court.").

More importantly, Mr. Jannisch cannot meet the requirements for issuance of a preliminary injunction.  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter* v. *Natural Resources Defense Council, Inc.,* 555 U.S. 7, 24 (2008) (citations omitted).  It serves not as a preliminary adjudication on the merits, but as a tool to preserve the status quo and prevent irreparable loss of rights before judgment. *Textile Unlimited, Inc.* v. *A.. BMH & Co., Inc.,* 240 F.3d 781, 786 (9th Cir. 2001).  In reviewing a motion for preliminary injunction, "courts must balance the competing claims of injury and

13

must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citations and internal quotation marks omitted).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20 (citations omitted).

*Winter* does not expressly prohibit use of a "sliding scale approach to preliminary injunctions" whereby "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance/or the Wild Rockies* v. *Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011).  The Ninth Circuit recognizes one such "approach under which a preliminary injunction could issue where the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in plaintiff's favor." *Id.* (citations and internal quotation marks omitted).

A preliminary injunction "should not be granted unless the movant, *by a clear showing,* carries the burden of persuasion." *Lopez* v. *Brewer,* 680 F.3d 1068, 1072 (9th Cir. 2012) (citations omitted, emphasis in original).  A request for a mandatory injunction seeking relief well beyond the status quo is disfavored and

14

shall not be granted unless the facts and law clearly favor the moving party.
*Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1319–20 (9th Cir. 1994).

Based upon three incidents, over the course of a year, Mr. Jannisch alleges
Defendants have conspired against Native Americans in retaliation for filing
lawsuits to interfere with their practice of religion.  As serious as these allegations
are, they are not the issues that are currently pending before the Court.  Mr.
Jannisch has not demonstrated how these allegations are related to the June 6,
2016 confiscation/destruction of his hobby/religious items.  He alleges "continued
outbursts of religious retaliation" but has only provided evidence regarding the
June 6, 2016 confiscation of religious materials, the February 28, 2017
confiscation of his medicine bag, and the August 3, 2017 write up for an improper
hobby project.  This evidence is insufficient to meet the *Winter* standard.

In addition, Mr. Jannisch's request for injunctive relief is vague.  "If an
injunction does not clearly describe prohibited or required conduct, it is not
enforceable by contempt."  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126,
1132 (9th Cir. 2006) (quoting *Gates v. Shinn*, 98 F.3d 463, 468 (9th. Cir. 1996)).
There is no clear indication in Mr. Jannisch's motion of what conduct he seeks to
prohibit.

An order prohibiting MSP from maintaining their current property policies

is not appropriate on the current record.

Based upon the foregoing, the Court issues the following:

## RECOMMENDATIONS

1.  Defendant's Motion for Summary Judgment (Doc. 29) should be DENIED.

2.  Mr. Jannisch's October 24, 2016 motion for injunctive relief (Doc. 7) should be DENIED AS MOOT.

3.  Mr. Jannisch's March 20, 2017 motion for injunctive relief (Doc. 23) should be DENIED.

4.  Mr. Jannisch's August 11, 2017 motion for injunctive relief (Doc. 36) should be DENIED.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[4]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

---

[4]As this deadline allows a party to act after the Findings and Recommendations is "served," it falls under Fed.R.Civ.P. 6(d).  Therefore, three (3) days are added after the period would otherwise expire.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 17th day of August 2017.


_____*/s/ John Johnston*_____
John Johnston
United States Magistrate