

FILED
NOV 16 2017
Clerk, U.S District Courts
District Of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WILLIAM E. JANNISCH, <br><br> Plaintiff, <br><br> vs. <br><br> LEROY KIRKEGARD, et al., <br><br> Defendants. | CV 16–00061–H–DLC–JTJ <br><br> ORDER |

United States Magistrate Judge John T. Johnston entered Findings and Recommendations in this case on August 17, 2017, recommending that Defendants' motion for summary judgment be denied and Plaintiff William E. Jannisch's ("Jannisch") October 24, 2016, March 20, 2017, and August 11, 2017 motions for injunctive relief also be denied. Defendants timely filed objections to the Findings and Recommendations with this Court on August 31, 2017. Consequently, Defendants are entitled to a de novo review of those findings and recommendations to which they specifically object. 28 U.S.C. § 636(b)(1)(C). This Court reviews for clear error those findings and recommendations to which no party objects. *See McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.,*

-1-

656 F.2d 1309, 1313 (9th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

## DISCUSSION

Because the parties are familiar with the factual and procedural background which Judge Johnston detailed in his Findings and Recommendations, they will not be restated here.

### I. Defendants' Objections

Judge Johnston concluded, and this Court agrees, that denial of the motion for summary judgment is appropriate because Defendants have not met their burden of demonstrating that administrative remedies were available and that Jannisch failed to properly utilize those remedies.

Defendants object to three analyses Judge Johnston utilized when deciding to recommend denial of the Defendants' motion for summary judgment. First, Defendants object to Judge Johnston's analysis of the second *Ross* exhaustion exception and argue that his analysis does not apply the correct standard. Second, Defendants object to Judge Johnston's conclusion denying summary judgment because they believe Judge Johnston used Jannisch's subjective knowledge when

concluding that the exhaustion remedies were unavailable to Jannisch. Lastly, Defendants object that Judge Johnston improperly focused on the waiver of due process rights instead of the exhaustion of remedies.

A. **Second *Ross* Factor Analysis**

Defendants first argue that Judge Johnston omitted key language that would establish that there was an available remedy to Jannisch. However, Judge Johnston's analysis in the Findings and Recommendations is analogous to the omitted key language and the addition of the language would not change the outcome of the denial.

The Prison Litigation Reform Act's ("PLRA") exhaustion requirement states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *Jones v. Bock*, 549 U.S. 199, 211 (2007). Under the PLRA,

prison regulations define the exhaustion requirements. *Jones*, 549 U.S. at 218.

The defendant bears the ultimate burden of proving failure to exhaust. *See Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005). If the defendant initially shows that (1) an available administrative remedy existed and (2) the prisoner failed to exhaust that remedy, then the burden of production shifts to the plaintiff to bring forth evidence "showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). Thus, once the defendant has carried his burden, the prisoner must produce evidence demonstrating that "the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile." *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (internal citations and quotation marks omitted).

"The ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" *Ross v. Blake*, 136 S.Ct. 1850, 1858 (2016) (quoting *Booth*, 532 U.S. at 737–38). Therefore, inmates must exhaust those "grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S.).

There are three general situations that can render a prison or jail grievance

process unavailable to an inmate. First, an administrative procedure is not available, and therefore need not be exhausted, "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 136 S.Ct. at 1859.

Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* Thus, "[w]hen rules are so confusing that no reasonable prisoner can use them, then they're no longer available." *Id.* (internal quotation marks and alteration omitted). Similarly, when the process is "essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* ; *see also Turney v. Burnside*, 541 F.3d 1077, 1084 (11th Cir. 2008) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available"). The procedures need not be sufficiently "plain" as to preclude any reasonable mistake or debate with respect to their meaning. *Ross*, 136 S.Ct. at 1859. Therefore, when an administrative process is susceptible to "multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.*

Finally, administrative remedies will be deemed unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" or if administrators otherwise interfere with an inmate's pursuit of relief. *Id.* at 1860. For example, if the prison improperly processed an inmate's grievance, if prison officials misinformed an inmate regarding grievance procedures, or if the inmate "did not have access to the necessary grievance forms within the prison's time limits for filing the grievance," the remedies will be considered unavailable. *Albino*, 747 F.3d at 1172–73.

Defendants argue that Jannisch waived his ability to contest the June 6, 2016 property seizures because he signed the form entitled "Summary Action/Cell Search/Property Receipt." (Doc. 2–1 at 2.) Defendants argue that because he "waived" his ability to contest the seizure by signing the form, there was an administrative remedy and Jannisch failed to exhaust that administrative remedy. (Doc. 30 at 7–8.) On the form signed by Jannisch on June 6, 2016, the columns for "Summary Action or Hearing?" and "Hearing Disposition" were left blank. (Doc. 2–1 at 2.) Conversely, when Jannisch's property was confiscated in a prior search on April 25, 2016, the signed form indicated within those columns that his property was to be mailed out. (Doc. 2–1 at 3.) Further, on the June 6, 2016,

form, there were only descriptions of the property removed, it does not give a reason for removal or disposition codes for any of the items. As Judge Johnston analyzed, it is not clear from the form that by signing it, Jannisch was consenting to waive his proper administrative exhaustion or consenting to the destruction of his property after seizure. There is simply no way for Jannisch to "consent to the disposal" of his property or "waive" his administrative remedies by signing the June 6, 2016, form.

Defendants object to Judge Johnston's analysis of the second *Ross* exception. Judge Johnston held that the "Court does not find that Mr. Jannisch's signature on the summary action/cell search/property receipt was a clear waiver of his due process rights and thus, administrative remedies were effectively unavailable." (Doc. 37 at 11.) Judge Johnston reasoned that administrative remedies were unavailable because the "rules are so confusing that no reasonable prisoner can use them" and the grievances were improperly processed. (*Id.*) Defendants object to Judge Johnston's reasoning in that it "did not cite to additional clarifying language from *Ross* providing: '[W]hen a remedy is . . . essentially "unknowable"—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable.'" (Doc. 38 at 7 (quoting *Ross*, 136 S.Ct. at 1859).) Defendants assert that this "clarifying language" is essential. However,

while Judge Johnston's conclusion that the rules in this case are "so confusing that no reasonable prisoner can use them" and are thus rendered unavailable does not quote the specific "clarifying language" regarding "unknowable" that the Defendants assert is key (i.e., "no ordinary prisoner can make sense of what [the rule] demands"), Judge Johnston's conclusion relies on equivalent language quoted from the same paragraph of *Ross*. (Docs. 37 at 11 (quoting *Ross*, 136 S.Ct. at 1859); 38 at 7 (quoting *Ross*, 136 S.Ct. at 1859).) The language is equivalent and the reasoning parallel. The Defendants place form over substance by asserting that different language be used.

Defendants further argue that "there can be no determination here based on the record that the procedure was so confusing that it could be deemed 'unknowable.'" (Doc. 38 at 7.) It is undisputed that Jannisch completed inmate orientation and signed an *Orientation Acknowledgment Form* acceding that he was responsible for following and adhering to MSP's rules and policies during his incarceration. Defendants state that MSP policy defines proper exhaustion for a confiscation of property from an inmate's cell. The policy holds that all items confiscated must be recorded on a "Summary Action" form and that the inmate will sign the form "if he accepts the confiscation." (Doc. 38 at 7.) Defendants contend that if the form is signed, the property is processed as contraband and if

unsigned, the inmate receives an infraction report and the chance to challenge the confiscation at a disciplinary hearing. Defendants assert that the existence of such administrative exhaustion policies, and the fact that Jannisch signed an acknowledgment that he was responsible for following the policies, should prove that Jannisch knew the effect of signing the "Summary Action/Cell Search/Property Receipt" form on June 6, 2016.

The reasoning of Defendants does not clear up the ambiguity regarding the June 6, 2016 form itself. To begin with, the form is entitled "Summary Action/Cell Search/Property Receipt," not just "Summary Action." The form does not automatically render the property removed to be disposed of or destroyed but rather, it prompts an officer to acknowledge on the form what is going to happen to the property. Thus, the question the inmate is left to decipher is whether the form invokes a summary action, cell search, *and* property receipt, *or* is this form just a property receipt when the form fails to indicate what will happen to the property by using the listed codes, such as "P-placed in Property Room," "E-Placed in Evidence Room," "DES-Destroyed," etc. (Doc. 2–1 at 2.) Jannisch's form is unclear because there is no indication as to the disposition of his property. Further, as mentioned above, it was also not indicated whether a Summary Action or Hearing would occur because those columns were left blank. The form signed

by Jannisch purports to be a Property Receipt only, with no indication of what is going to happen to the property. If the list were accurate, it would not be reasonable for Jannisch to refain from signing the Property Receipt because he would want an accurate description of the property in the hopes of having it all returned back to him. In his June 20, 2016, informal resolution form, Jannisch even indicated that he "signed summary for property receipt not destroy." (Doc. 31-1 at 40.) Again, because there was no disposition indicated on the form, there was nothing to caution Jannisch from signing. Had the Disciplinary Unit indicated destruction or disposal would result, Jannisch may have been more inclined not to sign, as that would imply to a reasonable person a summary action would occur to the listed property.

The Court agrees with Judge Johnston's analysis that the rules were so confusing no reasonable prisoner could use them, rendering them "unknowable," as defined by Defendants, and consequently unavailable, as found by Judge Johnston. The Court finds that Jannisch's signature on the "Summary Action/Cell Search/Property Receipt" was not a waiver of his right to pursue administrative remedies and the administrative remedies were effectively unavailable to him. Thus, the Court agrees with Judge Johnston's finding that there was no available remedy for Jannisch because the rules were so confusing that no reasonable

prisoner could use them.

## B. Jannisch's Subjective Ability

In their second objection Defendants argue that Judge Johnston improperly took into consideration Jannisch's subjective ability to understand the "Summary Action/Cell Search/Property Receipt" form when concluding that administrative remedies were unavailable. There is no exception excusing a prisoner's failure to exhaust based on his personal lack of knowledge regarding the exhaustion procedure. Several circuit courts have determined that an inmate's subjective lack of knowledge regarding a prison's exhaustion requirements does not make the process "unavailable." *See, e.g., Twitty v. McCoskey*, 226 Fed. Appx. 594, 595–96 (7th Cir. 2007) (unpublished) (rejecting inmate's argument that his failure to exhaust should have been excused because he was unaware of the procedure and the prison failed to inform him of it); *Brock v. Kenton Cnty.*, 93 Fed. Appx. 793, 797 (6th Cir. 2004) (unpublished) (rejecting an inmate's argument that exhaustion was unavailable to him because he was unaware of the system); *Johnson v. D.C.*, 869 F. Supp. 2d 34, 41 (D.C. Cir. 2012) ("While th[e D.C.] Circuit has not yet weighed in on the issue, the majority of courts to have done so have held that an inmate's subjective lack of information about his administrative remedies does not excuse a failure to exhaust."). While Judge Johnston necessarily analyzes

prisoner could use them.

## B. Jannisch's Subjective Ability

In their second objection Defendants argue that Judge Johnston improperly took into consideration Jannisch's subjective ability to understand the "Summary Action/Cell Search/Property Receipt" form when concluding that administrative remedies were unavailable. There is no exception excusing a prisoner's failure to exhaust based on his personal lack of knowledge regarding the exhaustion procedure. Several circuit courts have determined that an inmate's subjective lack of knowledge regarding a prison's exhaustion requirements does not make the process "unavailable." *See, e.g., Twitty v. McCoskey*, 226 Fed. Appx. 594, 595–96 (7th Cir. 2007) (unpublished) (rejecting inmate's argument that his failure to exhaust should have been excused because he was unaware of the procedure and the prison failed to inform him of it); *Brock v. Kenton Cnty.*, 93 Fed. Appx. 793, 797 (6th Cir. 2004) (unpublished) (rejecting an inmate's argument that exhaustion was unavailable to him because he was unaware of the system); *Johnson v. D.C.*, 869 F. Supp. 2d 34, 41 (D.C. Cir. 2012) ("While th[e D.C.] Circuit has not yet weighed in on the issue, the majority of courts to have done so have held that an inmate's subjective lack of information about his administrative remedies does not excuse a failure to exhaust."). While Judge Johnston necessarily analyzes

prisoner could use them.

## B. Jannisch's Subjective Ability

In their second objection Defendants argue that Judge Johnston improperly took into consideration Jannisch's subjective ability to understand the "Summary Action/Cell Search/Property Receipt" form when concluding that administrative remedies were unavailable. There is no exception excusing a prisoner's failure to exhaust based on his personal lack of knowledge regarding the exhaustion procedure. Several circuit courts have determined that an inmate's subjective lack of knowledge regarding a prison's exhaustion requirements does not make the process "unavailable." *See, e.g., Twitty v. McCoskey*, 226 Fed. Appx. 594, 595–96 (7th Cir. 2007) (unpublished) (rejecting inmate's argument that his failure to exhaust should have been excused because he was unaware of the procedure and the prison failed to inform him of it); *Brock v. Kenton Cnty.*, 93 Fed. Appx. 793, 797 (6th Cir. 2004) (unpublished) (rejecting an inmate's argument that exhaustion was unavailable to him because he was unaware of the system); *Johnson v. D.C.*, 869 F. Supp. 2d 34, 41 (D.C. Cir. 2012) ("While th[e D.C.] Circuit has not yet weighed in on the issue, the majority of courts to have done so have held that an inmate's subjective lack of information about his administrative remedies does not excuse a failure to exhaust."). While Judge Johnston necessarily analyzes

Jannisch's actions to the June 6, 2016, form, there is a distinction between analyzing Jannisch's subjective thoughts and analyzing Jannisch's objective actions. Judge Johnston analyzes the latter but, other than acknowledging what Jannisch contended he thought he was signing, refrained from analyzing the former. Judge Johnston used the correct standard and analysis to determine whether the process was unavailable. Thus, this Court finds no error in Judge Johnston's findings and recommendations when determining the remedy was unavailable to Jannisch.

### C. Due Process versus Administrative Rights

In Defendants' last objection, they argue that Judge Johnston's denial of summary judgment should be reversed because it relies on the incorrect premise of whether Jannisch waived his due process rights, rather than whether he waived his administrative rights. (Doc. 38 at 12.) Defendants argue that "had the Magistrate Judge applied the correct test, however, summary judgment would have been granted for Defendants." (Doc. 38 at 5.)

> A procedural due process analysis requires courts to consider three factors:
>
> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

requirement would entail.

*Wilkerson v. Austin*, 545 U.S. 209, 224–25 (2005) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)); *accord Singh v. Holder*, 638 F.3d 1196, 1208 (9th Cir. 2011). An administrative exhaustion analysis, on the other hand, merely requires courts to determine that (1) an available administrative remedy existed, (2) the prisoner failed to exhaust that remedy, and (3) nothing made the existing and generally available administrative remedies effectively unavailable. *Albino*, 747 F.3d at 1172. Regardless of whether Judge Johnston used the term due process instead of administrative remedies, the exception to the administrative exhaustion analysis was still clearly met throughout the rest of the analysis because there was no available remedy for Jannisch.

The Court does not find Judge Johnston's conclusion erroneous. Defendants have not met their burden to prove there were available administrative remedies for Jannisch and that Jannisch failed to exhaust those remedies because the proposed remedies were effectively "unavailable" to him. Thus, Defendants' Motion for Summary Judgment is denied.

## II. October 24, 2016 Motion for Injunctive Relief

Neither party objected to Judge Johnston's findings and recommendation to deny Jannisch's October 24, 2016 Motion for Injunctive Relief. Accordingly, the

Court reviews for clear error Judge Johnston's findings and recommendation that Jannisch's Motion for Temporary Restraining Order and Preliminary Injunction to stop the destruction of his property is moot. Finding no clear error, the Motion is denied as moot.

### III. March 20, 2017, and August 11, 2017, Motions for Injunctive Relief

Neither party objected to Judge Johnston's findings and recommendations to deny Jannisch's March 20, 2017, and August 11, 2017, Motions for Injunctive Relief. In Jannisch's second Motion for Temporary Restraining Order and Preliminary Injunction, he seeks an order to stop the "continued outbursts of religious retaliation, religious hate crime actions, religious discrimination, against and interfearance [sic] with Native American Indian ceremonies and practices." (Doc. 32 at 1.) In his third Motion for Temporary Restraining Order, Jannisch seeks an order to stop Defendants from confiscating his religious and hobby items. (Doc 36 at 3.)

Absent objection, the Court reviews for clear error. The Court agrees that Jannisch's Motions do not involve Defendants in this action and do not meet the requirements necessary to issue a preliminary injunction. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the

balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374, 172 L. Ed. 2d 249 (2008) (citations omitted). The Court agrees with Judge Johnston that Jannisch was unable to meet his burden. Additionally, the requests for injunctive relief are vague and fail to specify the conduct Jannisch seeks to prohibit. "If an injunction does not clearly describe prohibited or required conduct, it is not enforceable by contempt." *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1132 (9th Cir. 2006) (quoting *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996)). Finding no clear error, Jannisch's March 20, 2017, and August 11, 2017, motions for injunctive relief are denied. Accordingly,

IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 37) are ADOPTED IN FULL.

(1) Defendants' Motion for Summary Judgment (Doc. 29) is DENIED.

(2) Jannisch's October 24, 2016, March 20, 2017, and August 11, 2017, Motions for Injunctive Relief (Docs. 7; 23; 36) are DENIED.

DATED this 16th day of November, 2017.

Dana L. Christensen, Chief Judge
United States District Court