IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| WILLIAM E. JANNISCH, | CV 16-00061-H-DLC-JTJ |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE |
| D. BATES, J. WARD, LEROY KIRKEGARD, STEVE KREMER, and K. HORSWILL, | |
| Defendants. | |

Plaintiff William Jannisch filed a Complaint under 42 U.S.C. § 1983
alleging Defendants violated his rights under the First and Fourteenth
Amendments to the United States Constitution and the Religious Land Use and
Institutionalized Persons Act (RLUIPA) 42 U.S.C. § 2000, et seq when they
confiscated and destroyed his property.  (Complaint, Doc. 2.)  Defendants have
filed a motion for summary judgment on the merits of Mr. Jannisch's claims (Doc.
44) and Mr. Jannisch filed the following responsive documents:  "Plaintiff Objects
to Defendants 1st Interrogatories Answers – Motion for Summary Judgement for
Plaintiff" (Doc. 49) and "Motion–Objection to Defendants denial of Summary
Judgment and Request for Summary Judgment" (Doc. 51).  Those filings have
been liberally construed as both a motion for summary judgment and a response to

1

Defendants' motion for summary judgment.

Having considered the parties' arguments and submissions, the Court finds Defendants' motion for summary judgment should be granted and Mr. Jannisch's motions for summary judgment should be denied.

## I.    STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under summary judgment practice, "[t]he moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).

"Where the non-moving party bears the burden of proof at trial, the moving

party need only prove that there is an absence of evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (*citing Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).  Summary judgment should be entered, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.*

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.

3

*See* Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11.  But "[a] plaintiff's verified complaint may be considered as an affidavit in opposition to summary judgment if it is based on personal knowledge and sets forth specific facts admissible in evidence." *Lopez v. Smith*, 203 F.3d 1122, 1132 n.14 (9th Cir. 2000) (en banc).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact "that might affect the outcome of the suit under the governing law," and that the dispute is genuine, i.e., "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all inferences supported by the evidence in favor of the non-moving party." *Walls v. Cent. Costa Cnty. Transit Auth.*, 653 F.3d 963, 966 (9th Cir. 2011).  It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586 (citations omitted).

By notice provided November 3, 3017 (Doc. 47), Mr. Jannisch was advised

4

of the requirements for opposing a motion brought pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  *See Rand v. Rowland*, 154 F.3d 952, 957 (9th

Cir. 1998)(en banc); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

## II.    FACTS[1]

### A.  Confiscation of Property

Montana State Prison ("MSP") Procedure 5.5.4 governs MSP's Hobby

Program and is a privilege for MSP inmates.  (Statement of Undisputed Facts,

Doc. 46 ("SUF") at ¶ 5.)  Inmates who wish to participate in MSP's Hobby

Program must apply for a hobby permit by sending a request to their Unit

Manager, who determines whether the inmates meet certain criteria for the

program, including clear conduct.  (SUF at ¶ 6.)  While incarcerated at MSP, Mr.

Jannisch acquired a hobby permit, pursuant to MSP Policy 5.5.4, which allowed

him to possess beads, bone, buffalo horn, abalone shell, needle, and other craft

supplies for the sole purpose of manufacturing hobby-related items.  (SUF at ¶ 8.)

MSP Procedure 5.5.4 does not allow for inmates to indefinitely possess

finished hobby crafts within their respective cells.  Rather, completed hobby craft

---

[1]The facts are taken from Defendants' Statement of Undisputed Facts.  Since Mr. Jannisch did not file a Statement of Disputed Facts, the facts as presented by Defendants are deemed admitted pursuant to Local Rule 56.1(d) unless otherwise disputed by the record.

items must be mailed out as gifts, sent to the Hobby Store for sale, or sent to a

contract purchaser.  (SUF at ¶ 10.)  Items not sold through the Hobby Store within

eighteen months must be returned to the prison to be mailed out at the inmate's

expense.  (SUF at ¶ 11.)  MSP Procedure 5.5.4 provides that "The availability of

hobby craft accessories and materials will be restricted to ensure security and

safety considerations are met."  (MSP 5.5.4, Doc 46-4 at 6; SUF at ¶ 12.)

MSP Procedure 5.5.4, § III.D.4 states that inmates lose all hobby privileges

for at least six months when they are moved into a higher-custody living

compound due to a disciplinary write-up.  (SUF at 32.)  Mr. Jannisch received a

disciplinary write-up and was reclassified to a higher-custody living compound in

April 2016.  As a result, he lost his hobby privileges for at least six months,

pursuant to MSP Procedure 5.5.4. § III.D.4.  (SUF at ¶¶ 28, 33.)

Section III(I)(2)(a) of MSP Procedure 3.1.17B states:

Contraband found in the possession of an inmate or cell or storage
area assigned to an inmate:

     a.     Staff will document non-dangerous/minor category
           contraband items seized during a search of an inmates
           cell on a Summary Action/Cell Property Receipt form.
           If the inmate is present during the search, staff will ask
           him if he will accept the summary action (disposing of
           the seized items).
           1)     If the inmate accepts the summary action, staff
                 will have him sign the form and give the inmate a
                 copy. Staff will bring the paperwork and items to

> the Command Post, draw the keys to the
> disciplinary contraband disposal bin next to Tower
> 1, and place the items in the bin for disposal by
> disciplinary staff.
>
> 2)   If the inmate doesn't accept the summary action,
> or isn't present when the contraband is seized,
> staff will cite him for a minor rule infraction,
> attach the summary action form and the infraction
> report to the seized items, and bring the paperwork
> and items to the Command Post. Staff will make a
> copy of the infraction report, attach it to the
> contraband, draw the keys to the appropriate unit
> evidence storage bin near Tower 1, and put the
> items and copy of the report in the bin for
> processing by housing unit disciplinary staff. Staff
> will put the original infraction report in the
> appropriate unit mailbox in the Command Post.

(Doc. 46-2 at 9.)

MSP's Institutional Discipline Policy 3.4.1, § II defines "Summary Action"

as the "lowest form of disciplinary action used for inmate contraband, with mutual

agreement between the staff member who discovers the contraband and the

inmate.  If the inmate accepts the summary action, the staff member will have him

sign the form to verify his agreement.  If this action is not mutual, staff will cite

the inmate on an infraction report and a disciplinary hearing will be conducted."

(Doc. 46-2 13.)

On June 6, 2016, MSP personnel performed a search of Mr. Jannisch's high

side cell.  (SUF at ¶ 34.)  The June 6, 2016 Summary Action/Cell Search/Property

7

Receipt signed by Corrections Officer Sawicki and Mr. Jannisch indicates the following property was removed from Mr. Jannisch's cell:  1 multi colored baby type blanket, 1 versa beading loom in black zip storage bag, 1 red leather beaded sachel made from a leather glove marked high yard, 5 small beaded pieces of red leather made from the fingers of a glove marked high yard, 1 spool of beading string, 6 tubes of misc. colored beads, 5 med. baggies misc colored beads, 1 square of blue velvet type cloth, 1 wood 2 piece dream catcher, 2 round beaded earrings, 1 feather beaded earring, 1 black feather, 4 strips of bead work, and 3 watch band pins in small baggie.  (Doc. 2-1 at 2.)[2]

MSP Property Officer Hunt testified that Mr. Jannisch did not have a hobby permit to possess beads and excess feathers and he was not authorized to alter prison-owned leather gloves.  (SUF at ¶ 34.)

On June 14, 2016, Mr. Jannisch submitted an informal request asking that all items taken from his cell on June 6, 2016 be returned and not destroyed.  On

---

[2]Defendants represent in the Statement of Undisputed Facts that these items were removed as contraband but Officer Sawicki who signed the form did not submit an affidavit and there is no indication on the form why those items were confiscated.  Although Property Officer Darcey Hunt testified by affidavit that the property taken on June 6, 2016 was confiscated as contraband, she does not explain how she obtained that information.  Where an affidavit is relied on to support a summary judgment motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed R. Civ. P. 56(c)(4).

June 20, 2016, Defendant Kremer denied the request, stating, "These items were removed and a summary action given.  By signing the summary action you were giving up your right to a hearing.  If this is not the case resubmit and I will investigate further."  (SUF at ¶ 46.)

On June 20, 2016, Mr. Jannisch resubmitted his informal request, but did not refute that he had signed the summary action.  As such, Defendant Kremer denied the request, stating, "The items were taken as hobby and per policy have been destroyed.  Your cell had a number of illeagal (sic) items that you were not allowed.  You gave up your right to a hearing when you signed the summary action."  (SUF at ¶ 47.)

### B.  MSP Religious Policies

MSP Procedure 4.1.3 governs Inmate Personal Property, including religious property.  (SUF at ¶ 50.)  At all times relevant to this matter, Attachment A to MSP Procedure 4.1.3 included a list of the approved religious items that inmates are authorized to possess within their cells.  Inmates who declared a "Native American" religious preference were allowed to personally possess (1) one cup of sage in a clear bag, (2) one 12-inch-long braid of sweetgrass, (3) one cup of cedar in a clear bag, (4) one cup of juniper in a clear bag, (4) one cup of bitterroot in a clear bag, (5) one cup of osha root in a clear bag, (6) one plain 2.5 inch by 2.5 inch

leather pouch—without beading or adornments—with a twenty-four inch leather

lanyard, (7) four feathers without beading or adornments, (8) one dream catcher

with a maximum diameter of five inches that may contain beads pending security

approval, and (9) one cup of lavender in a clear bag.  (SUF at ¶ 51.)

MSP Procedure 5.6.1 governs Religious Programming at MSP.  (SUF at ¶

53.)  When an inmate wishes to obtain religious property accommodations not

listed in Attachment A to MSP Procedure 4.1.3, he must request the

accommodation by sending a request form to MSP's Religious Activities

Coordinator, pursuant to MSP Procedure 5.6.1.  (SUF at ¶ 54.)  The steps listed in

MSP Procedure 5.6.1. § III.E.1 outline the only way inmates may obtain

permission to possess personal religious property that is not included in

Attachment A to MSP Procedure 4.1.3.  (SUF at ¶ 55.)

Upon receiving a request from an inmate, the Religious Issues Committee

will then make a decision and respond in writing, detailing the specific reasons for

its decision.  (SUF at ¶ 56.)  If the inmate is not satisfied with the decision, he may

utilize the prison's grievance system.  (SUF at ¶ 57.)  When inmates possess

personal property in excess of that allowed in the Property Policy (including

property not specifically allowed by the Religious Issues Committee), such

property is deemed "contraband" and is governed by MSP's Contraband Policy.

10

(SUF at ¶ 58.)

On May 16 and 22, 2016, Mr. Jannisch submitted Religious Accommodation Request Forms to the Religious Activities Coordinator and the Religious Issues Committee requesting various "Religious Items," including: Medicine bags, beaded and hairbone pipe necklaces, wrapped talons and claws, neckwear beads and bone, chokers, wrist bands, leather, deer/elk hide, and other "handmade 'spiritual item[s].'" (SUF at ¶ 59.) On September 7, 2016, MSP Religious Activities Coordinator Terrie Stefalo ("Stefalo") denied Mr. Jannisch's requests because they were "too overarching" and because Mr. Jannisch "failed to articulate a sincere religious reason for each item listed." (SUF at ¶ 60.)

Also on May 16 and 22, 2016, Mr. Jannisch submitted additional Religious Accommodation Request Forms, requesting an abalone shell, bandanas, oils, and a prayer blanket. (SUF at ¶ 61.) On September 6 and 7, 2016, Stefalo granted Mr. Jannisch's request for a prayer blanket and denied the remaining requests, citing either compelling safety and security interests (abalone shell and oils) or a lack of sincere religious reasons to grant the accommodation (bandana). (SUF at ¶ 62.)

On February 13, 2017, Mr. Jannisch submitted additional Religious Accommodation Request Forms, requesting a beaded or plain 6" x 6" x 1" medicine bundle for the purpose of keeping all allowed medicines, a real eagle

feather fan, a medicine wheel, a tribal power band/bracelet, and pendants/Totems necklace.  (SUF at ¶ 63.)  On May 2, 2017, Stefalo denied Mr. Jannisch's request for a medicine bundle due to the secure and orderly operations of MSP.  Stefalo also denied Mr. Jannisch's request for a real eagle fan because it is illegal for MSP to obtain and be in possession of real eagle feathers, which are registered to Native Americans individually.  Stefalo also denied Mr. Jannisch's request for a medicine wheel because Mr. Jannisch failed to provide sufficient information for religious justification for the item.  Stefalo also informed Mr. Jannisch that his request for a power band/bracelet was tabled because he did not propose a specific power band/bracelet to be reviewed by the committee.  Mr. Jannisch's request for pendants/Totem's necklace was also tabled because he did not provide a specific totem necklace to be reviewed by the committee.   (SUF at ¶ 64.)

## III.   DISCUSSION

Although a number of other facts and allegations have been raised during the course of this litigation, the issues raised in the Complaint are whether the June 6, 2016 confiscation and subsequent destruction of Mr. Jannisch's property violated his right to procedural due process as protected by the Fourteenth Amendment to the United States Constitution, violated his right to free exercise of religion as protected by the First Amendment to the United States Constitution,

and/or violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA).  (Complaint, Doc. 2 at 6.)

Specifically, Mr. Jannisch alleged that on June 6, 2016, Defendants D. Bales[3] and J. Ward, Prison Property Officers, confiscated and later destroyed his personal religious property impeding his religious practice.  He also indicated that the destroyed property had religious sentimental value and was blessed by a Cheyenne Shalwman, who is now deceased making it extremely meaningful to him.  He alleged his mother contacted Defendant Kirkegard, then MSP Warden, concerning the religious property approximately one month prior to the property being destroyed and requested that he stop the destruction of the property.  He also claims Defendant Kremer ignored his numerous requests to keep his religious property and Defendant Horswill used the allegedly unconstitutional hobby policy to allow his property to be destroyed.  (Complaint, Doc. 2 at 6.)

### A.    Fourteenth Amendment

### 1.  Substantive Claim

The Due Process Clause protects prisoners from being deprived of property

---

[3]Mr. Jannisch named "D. Bates" in his Complaint but he presumably misnamed this Defendant as Defendants filed an Answer on behalf of Diana Bales. There being no objection from Mr. Jannisch the Court will assume the correct spelling of this Defendant's name is "Bales."

without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).

Prisoners have a protected interest in their personal property. *Hansen v. May*, 502

F.2d 728, 730 (9th Cir. 1974). Although prisons often ban or limit inmates'

possession of certain types of personal property, a property interest that has been

recognized and protected by state law may be protected under the Due Process

Clause of the Fourteenth Amendment. *Paul v. Davis*, 424 U.S. 693, 710 (1976);

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972); *Nevada*

*Dept. of Corrections v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011).

To prevail on a procedural due process claim, a litigant must show (1) that

he was deprived of a constitutionally-protected liberty or property interest; (2)

"what process is due"; and (3) that he was denied adequate due process under the

appropriate standard. *Brewster v. Board of Educ. of Lynnwood Unified School*

*Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

### a. Constitutionally Protected Property Interest

An individual's property is a fundamental example of a protected interest.

*See Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). The Court is cognizant that an

inmate's constitutional rights "must be exercised with due regard for the

'inordinately difficult undertaking' that is modern prison administration."

*Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (*quoting Turner v. Safley*, 482

14

U.S. 78, 85 (1987)).  While the Ninth Circuit has not yet reached this issue, other courts have found that "while an inmate's ownership of property is a protected property interest that may not be infringed upon without due process, there is a difference between the right to own property and the right to possess property while in prison."  *Searcy v. Simmons*, 299 F.3d 1220, 1229 (10th Cir. 2002) (*quoting Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002)).

It is undisputed that Mr. Jannisch did not have a hobby permit to possess beads and excess feathers and he was not authorized to alter prison-owned leather gloves.  (SUF at ¶ 34.)  As such, Mr. Jannisch did not have a right to possess this property while in prison.  But in his June 14, 2016 informal resolution form, Mr. Jannisch indicated that the following items (confiscated on June 6, 2016) were personal/spiritual items which were allowed per DOC policy:

> (1) multi colored Native Indian prayer blanket (on property record)
> (1) versa beading loom in case (new)
> (1) square blue velvet cloth (allowed)
> (1) black prayer feather (not beaded)
> (1) power bands (Tribal colored, Cheyenne) not hobby
> (3) watch band pins
> (1) medicine wheel made of red willow (dream wheel)

(Doc. 31-1 at 41.)  Mr. Jannisch requested that his items be returned ASAP so that they would not be destroyed and all beads be sent out or donated.  (Doc. 31-1 at 41.)  Defendants do not dispute that the above listed items were allowed per DOC

policy and the record contains no justification for the removal and destruction of this property.  Therefore, for purposes of these findings, the Court will assume that Mr. Jannisch had a constitutionally protected property interest and right to possess the property listed on his June 14, 2016 informal resolution form.

### b.  Process Due

The United States Supreme Court in *Matthews v. Eldridge*, 424 U.S. 319 (1976) set forth the following three facts to consider in determining "what process is due":

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Matthews*, 424 U.S. at 335.

Here, the private interest at stake is the property right of an inmate. Mr. Jannisch's private interest in his property was not absolute but his private interest was strengthened given the nature of the property.  While there may have been justification for seizure of Mr. Jannisch's excess hobby material there is no indication in the record why the property listed on the June 14, 2016 informal resolution form was confiscated.  Mr. Jannisch presented undisputed evidence that

16

this property was irreplaceable non-hobby religious property allowed by DOC policy. As such, the Court finds Mr. Jannisch's interest in this property was significant.

The second factor is whether there was a risk of erroneous deprivation and the probable value of additional procedural safeguards. *Matthews*, 424 U.S. at 335. Mr. Jannisch's property confiscated on June 6, 2016 was destroyed pursuant to MSP Policy 3.1.17B III(I)(2) which provides:

> Contraband found in the possession of an inmate or cell or storage area assigned to an inmate:
>
> a.    Staff will document non-dangerous/minor category contraband items seized during a search of an inmates cell on a Summary Action/Cell Search/Property Receipt form.
> If the inmate is present during the search, staff will ask him if he will accept the summary action (disposing of the seized items).
>
> 1)    If the inmate accepts the summary action, staff will have him sign the form and give the inmate a copy. Staff will bring the paperwork and items to the Command Post, draw the keys to the disciplinary contraband disposal bin next to Tower 1, and place the items in the bin for disposal by disciplinary staff.
>
> 2)    If the inmate doesn't accept the summary action, or isn't present when the contraband is seized, staff will cite him for a minor rule infraction, attach the summary action form and the infraction report to the seized items, and bring the paperwork and items to the Command Post. Staff will make a copy of the infraction report, attach it to the

> contraband, draw the keys to the appropriate unit
> evidence storage bin near Tower 1, and put the
> items and copy of the report in the bin for
> processing by housing unit disciplinary staff. Staff
> will put the original infraction report in the
> appropriate unit mailbox in the Command Post.

(Contraband Control Procedure 3.1.17B, Doc. 46-2 at 9.)

The Supreme Court "usually has held that the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citations omitted). So, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." *Id*. at 132. However, post-deprivation process can suffice "in limited cases" when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted. *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988).

Here there are two deprivations at issue–the temporary initial confiscation of the property and then the permanent deprivation when the property was destroyed. The Court finds that temporary seizure of property believed to be contraband does not require a pre-deprivation hearing. Once contraband is located

in a prison facility prompt action is required and the state has a substantial interest in swift action to remove contraband.  While there may be a risk of baseless or unwarranted taking of property, that risk is abated by the assurance of a hearing prior to the permanent deprivation of the property.

Although MSP Policy 3.1.17B III(I)(2) provides for the opportunity for a hearing prior to the ultimate destruction, MSP's procedure risks erroneous deprivation because it allows property to be destroyed based upon an inmate's signature on a form entitled "Summary Action/Cell Search/Property Receipt."  The form itself does not provide notice that by signing the form an inmate waives his right to a hearing and consents to immediate destruction of his property.  (Doc. 2-1 at 2.)  The title of the form is contradictory regarding what an inmate may be consenting to by signing the form.  Clearly, in this case Mr. Jannisch believed he was signing the form as a property receipt because he indicated he "signed summary for property receipt not destroy."  (Doc. 46-1 at 40.)

A policy which allows an inmate to consent to the destruction of property by signing a form with no indication on the form that by doing so they are waiving their right to a hearing and are consenting to the immediate destruction of their property creates a risk of erroneous deprivation.  The probable value of an additional procedural safeguard such as an indication on the form that by signing

19

the form you are consenting to the destruction of your property seems minimal.

The third factor the Court must consider is the government's interest, including the administrative burdens that additional procedural requirements would entail.  Here, as stated, an additional warning on a form would not seem to be a large administrative burden.

### c. Denied Adequate Due Process

Defendants argue that Mr. Jannisch was provided with adequate due process because he was instructed on MSP rules and thereafter he waived his right to a disciplinary hearing regarding his property.  It is undisputed that Mr. Jannisch was instructed on MSP rules and procedures, including, but not limited to, those pertaining to:  Property, Hobby, Searches, Classifications, Reclassifications, Disciplinary, Rules and Regulations, Levels of Infractions, Appeals, Grievance, Grievable Issues, Non-Grievable Issues, and Emergency Grievances.  (SUF at 3.) There is no indication in the record, however, that Mr. Jannisch was specifically instructed on the Contraband Control Procedure 3.1.17B.  Moreover, there is no evidence that he was ever instructed that by signing the Summary Action/Cell Search/Property Receipt form he was agreeing to the immediate destruction of his property.

In addition, the form was not properly completed.  For example, the box for

"Type of Infraction" was left blank.  More importantly, the column for "Summary Action or Hearing?" was left blank.  Accordingly, when Mr. Jannisch signed the form it is unclear whether he was agreeing to "summary action."  Additionally, although there was a description of the property removed there was no reason given for why the property was removed.  (Doc. 2-1 at 2.)

At its simplest, due process requires that "a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965).  Here, there is a genuine issue of material fact regarding whether Mr. Jannisch was given notice that he was waiving his right to a hearing when he signed the summary action/cell search/property receipt form and that his property would be immediately destroyed.  As such, there is a genuine issue of material fact regarding whether Mr. Jannisch's procedural due process rights were violated when his property was taken for no given reason and then destroyed because he signed an incomplete form which does not clearly indicate that he was giving up right to his personal religious property and without evidence that he was instructed on the implications of signing the form.

### 2.   Qualified Immunity

Defendants, however, also argue they are entitled to summary judgment

21

based upon the doctrine of qualified immunity.  The doctrine of qualified

immunity protects government officials "from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights

of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982); *Pearson v. Callahan*, 129 S.Ct. 808, 815 (2009).  To overcome

qualified immunity, a plaintiff in a § 1983 action has the burden to show that 1)

the facts make out a § 1983 violation of the plaintiff's federal or constitutional

rights and 2) the right at issue is clearly established at the time of the alleged

misconduct.

Defendants argue that Mr. Jannisch provided "no facts showing how any

individual Defendant personally violated his Fourteenth Amendment due process

rights." (Doc. 45 at 25.)  The Court agrees.  The only evidence regarding

Defendants Bales and Ward is that they inventoried the property removed from

Mr. Jannisch's cell on April 16, 2016.  (SUF at ¶ 15; Ward Affidavit, Doc. 46-3 at

¶ 6; Property Inventory, Doc. 19-13 at 11.)  There is no evidence in the record that

Defendants Bales and Ward were involved in the June 6, 2016 confiscation and

subsequent destruction of Mr. Jannisch's property.

Mr. Jannisch alleged in his Complaint that Defendant Kremer and Kirkegard

were aware of the wrongful destruction of his property and allowed it to occur.

(Doc. 2 at 6.)  There is no evidence, however, that either of these Defendants were aware of the destruction of Mr. Jannisch's property before it occurred.  "A defendant may be held liable as a supervisor under § 1983 'if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (*quoting Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).  "The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury."  *Id.* at 1207-08 (internal citations, quotation marks, and alterations omitted); *see also Lacey v. Maricopa Cty.*, 693 F.3d 896, 915 (9th Cir. 2012) (explaining that claim brought under 42 U.S.C. § 1983 has a causation requirement with liability extending to those state officials who subject, or cause to be subjected, an individual to a deprivation of his federal rights).

In response to Mr. Jannisch's June 20, 2016 informal resolution form, Defendant Kremer indicated that the items taken from Mr. Jannisch's cell had been destroyed.  (Doc. 31-1 at 40.)  Mr. Jannisch has presented no evidence that either Defendant Kremer or Defendant Kirkegard were aware of the June 6, 2016

23

confiscation of property prior to the property being destroyed.  As such, Mr.

Jannisch has not established a sufficient causal connection between Defendants

Kremer and Kirkegard's conduct and the denial of procedural due process.

Defendants Kremer and Kirkegard cannot be held liable based solely on the

conduct of their subordinates.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendant Horswill is the Hobby Director at MSP and there is no evidence

in this record that she was involved in the June 6, 2016 confiscation and

destruction of Mr. Jannisch's property.

As such, the named Defendants will be recommended for dismissal.

**B.     Religious Claims**

The First Amendment to the United States Constitution provides that

"Congress shall make no law respecting the establishment of religion, or

prohibiting the free exercise thereof . . . " U.S. Const. amend. I.  Inmates "retain

protections afforded by the First Amendment," including the free exercise of

religion.  *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).  However,

"'[l]awful incarceration brings about the necessary withdrawal or limitation of

many privileges and rights, a retraction justified by the considerations underlying

our penal system.' " *Id.* (*quoting Price v. Johnson*, 334 U.S. 266, 285 (1948)).

To implicate the Free Exercise Clause, a belief must be both sincerely held

24

and rooted in religious belief. *Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). "In order to reach the level of a constitutional violation, the interference with one's practice of religion 'must be more than an inconvenience; the burden must be substantial. . . .'" *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (*quoting Graham v. C.I.R.*, 822 F.2d 844, 851 (9th Cir.1987)) *overruled on other grounds by Shakur*, 514 F.3d at 884–85.

Mr. Jannisch has also raised a claim under RLUIPA which provides:

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that governmental interest.

42 U.S.C. § 2000cc–1(a)(1).

"While [RLUIPA] adopts a 'compelling governmental interest' standard, '[c]ontext matters' in the application of that standard." *Cutter v. Wilkinson*, 544 U.S. 709, 722–23 (2005) (alteration in original) (internal citation omitted) (*quoting Grutter v. Bollinger*, 539 U.S. 306, 327 (2003)). Courts are expected to apply RLUIPA's standard with "'due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of

costs and limited resources.'"  *Cutter*, 544 U.S. at 723.

To state a prima facie case under RLUIPA, a plaintiff must show that a regulation imposes a substantial burden on his religious exercise.  *See Warsoldier v. Woodford*, 418 F.3d 989, 994–95 (9th Cir. 2005).  RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief."  § 2000cc–5(7)(A).  The Ninth Circuit has held that "a substantial burden on religious exercise must impose a significantly great restriction or onus upon such exercise."  *San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1034 (9th Cir.2004) (internal quotation marks omitted).

The Court discerns two religious claims.  First, there is an issue regarding whether the destruction of Mr. Jannisch's property violated his First Amendment or RLUIPA rights.  It is undisputed that someone destroyed Mr. Jannisch's property confiscated on June 6, 2016.  Mr. Jannisch, however, has not shown that there is a genuine dispute regarding whether Defendants placed a substantial burden on his religious exercise.  Mr. Jannisch has established that the destroyed property was irreplaceable but other than making a conclusory statement that its loss places a substantial burden on his religious exercise–he provides no factual evidence to support this conclusory allegation.  Mr. Jannisch presented no factual

evidence to demonstrate that his religious exercise was so burdened that it pressured him to abandon his beliefs. *See Warsoldier*, 418 F.3d at 996 (upholding Native American inmate's RLUIPA claim challenging a prison grooming policy where prisoner alleged he was subjected to a series of punishments for refusing to comply with the policy); *Shakur v. Schriro*, 514 F.3d 878, 882, 891 (9th Cir. 2008) (remanding Muslim prisoner's RLUIPA claim to determine whether state-provided vegetarian meals, which prisoner claimed gave him gas and aggravated his hiatal hernia, pressured him to abandon his beliefs by precluding the state of "purity and cleanliness" necessary for Muslim prayer).

Mr. Jannisch has not established that there is a genuine issue of material fact regarding whether Defendants imposed a substantial burden on his religious practice. As such, Defendants' motion for summary judgment should be granted on Mr. Jannisch's First Amendment and RLUIPA claims regarding the destruction of his property should be dismissed.

The second religious issue is whether MSP's Hobby Policy imposing limitations on possession of hobby items and supplies by inmates violates the First Amendment and/or RLUIPA. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* sets forth

four factors to be balanced in determining whether a prison regulation is

reasonably related to legitimate penological interests:  (1) whether there is a

"'valid, rational connection' between the prison regulation and the legitimate

governmental interest put forward to justify it"; (2) whether there are "alternative

means of exercising the right that remain open to prison inmates";  (3) whether

"accommodation of the asserted constitutional right" will "impact . . . guards and

other inmates, and on the allocation of prison resources generally"; and (4)

whether there is an "absence of ready alternatives" versus the "existence of

obvious, easy alternatives." *Turner*, 482 U.S. at 89-90 (*quoting Block v.*

*Rutherford*, 468 U.S. 576, 586 (1984)).

MSP policies indicate that there is a legitimate interest in restricting inmate

possession of hobby items and materials to ensure security and safety

considerations.  (MSP Procedure 5.5.4 Hobby Program III(B)(5), Doc. 46-4 at 6.)

Mr. Jannisch does not dispute this evidence.

Secondly, Defendants presented undisputed evidence that there are

alternative avenues for Mr. Jannisch to exercise his religious rights by obtaining

proscribed religious property items.  According to Defendants, if an inmate seeks

to possess any allegedly-religious property not already allowed under MSP's

Inmate Personal Property Policy, the MSP Religious Programming Policy provides

28

a means to request such property.  (SUF at ¶¶ 54-56.)  It is undisputed that MSP's Religious Programming Policy is the exclusive avenue for inmates to obtain additional items to facilitate religious practices.  (SUF at ¶55.)  Thus, Mr. Jannisch, at all times, had an alternative means of obtaining additional religious items.

Next, Defendants argue that the impact of accommodating Mr. Jannisch's declared right to keep all religious items created through the Hobby Program would elevate the possibility of danger to inmates and correctional officers, by creating an uncontrolled influx of items and materials into the prison.  It is undisputed that the policies on Religious Programming and Grievances currently provide multiple levels of scrutiny to guarantee that all religious property permitted within the prison's walls allow MSP to remain safe for all inmates and correctional officers, while at the same time, allowing inmates to freely practice their declared religions.  (SUF, ¶¶50-58.)

The Court finds that the hobby policy's restrictions on property did not violate Mr. Jannisch's First Amendment rights or RLUIPA rights.  Mr. Jannisch has not established that there is a genuine issue of material fact regarding whether the MSP Hobby Policy imposed a substantial burden on his religious practice.  He does not assert that he was prevented from engaging in conduct which he sincerely

29

believes is consistent with his faith.  Nor has he shown that he was coerced to forego his religious beliefs or forced to engage in conduct that violates those beliefs.

Based upon the foregoing, the Court issues the following:

**RECOMMENDATIONS**

1.  Defendants' Motion for Summary Judgment (Doc. 44) should be GRANTED.  The Clerk of Court should be directed to all close this matter and enter judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

2.  Mr. Jannisch's December 4, 2017 filing entitled "Plaintiff Objects to Defendants 1st Interrogatories Answers – Motion for Summary Judgement for Plaintiff" (Doc. 49) to the extent it can be construed as a motion for summary judgment should be DENIED.

3.  Mr. Jannisch's January 5, 2018 filing entitled "Motion–Objection to Defendants denial of Summary Judgment and Request for Summary Judgment" (Doc. 51) to the extent it can be construed as a motion for summary judgment should be DENIED.

4.  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.

**NOTICE OF RIGHT TO OBJECT TO FINDINGS &
RECOMMENDATIONS AND CONSEQUENCES OF FAILURE TO OBJECT**

The parties may file objections to these Findings and Recommendations within fourteen (14) days after service (mailing) hereof.[4]  28 U.S.C. § 636.  Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

This order is not immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed.R.App.P. 4(a), should not be filed until entry of the District Court's final judgment.

DATED this 27th day of August, 2018.


_/s/ John Johnston_____
John Johnston
United States Magistrate

---

[4]Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since Mr. Jannisch is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.