IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION



| | |
|---|---|
| WILLIAM E. JANNISCH, | CV 16–61–H–DLC–JTJ |
| Plaintiff, | |
| vs. | ORDER |
| D. BATES, J. WARD, LEROY KIRKEGARD, STEVE KREMER, and K. HORSWILL, | |
| Defendants. | |

United States Magistrate Judge John Johnston entered his Findings and Recommendations on August 27, 2018, recommending that Plaintiff William E. Jannisch's ("Jannisch") two filings be liberally construed as motions for summary judgment and denied and that Defendants' Motion for Summary Judgment be granted. (Doc. 55 at 30.) Jannisch timely filed an objection and is therefore entitled to de novo review of the specified findings and recommendations to which he objects. 28 U.S.C. § 636(b)(1). Those portions of the findings and recommendations not specifically objected to will be reviewed for clear error. 28 U.S.C. § 636(b)(1)(A); *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a

-1-

"definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted). For the reasons stated below, Judge Johnston's Findings and Recommendations are adopted in full.

Jannisch is a prisoner at Montana State Prison and is proceeding pro se. Jannisch alleges that the June 6, 2016 confiscation and subsequent destruction of Jannisch's property violated his right to procedural due process as protected by the Fourteenth Amendment, violated his right to free exercise of religion as protected by the First Amendment, and violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). Judge Johnston found a "genuine issue of material fact regarding whether Mr. Jannisch's procedural due process rights were violated" but, ultimately, determined that the defendants identified by Jannisch were protected by qualified immunity. (Doc. 55 at 21–24.) Judge Johnston found that Jannisch had stated two potential claims under both the First Amendment and RLUIPA: 1) whether the destruction of Jannisch's property violated his rights, and 2) whether the Montana State Prison policy limiting possession of hobby items violated Jannisch's rights. Judge Johnston found that summary judgment should be granted to Defendants on the first claim under both the First Amendment and RLUIPA and this is not objected to by Jannisch. As to the second claim, Judge Johnston found that Jannisch had not established that there

is a genuine issue of material fact regarding whether the Montana State Prison policy imposed a substantial burden on Jannisch's religious practice. Consequently, Defendants were entitled to summary judgment on Jannisch's second religious claim. (Doc. 55 at 26–30.)

As regards Judge Johnston's findings and recommendations on Jannisch's Due Process claim, Jannisch first objects to Judge Johnston's finding that Defendants Bates, Ward, Kremer, and Kirkegard are protected by qualified immunity. (Doc. 59 at 1–2.) Jannisch argues that because Bates and Ward personally confiscated Jannisch's belongings and issued a "confiscation form," they are "personally involved." (*Id.* at 1–2.) As to Kremer, Jannisch alleges that Kremer was given the confiscated property and delivered it to others "knowing full well that it would be destroyed" which, Jannisch believes, "demonstrates both personal involvement and personal advanced knowledge" that Jannisch would be deprived of his property. (*Id.* at 2.) Lastly, Jannisch alleges that "insufficient evidence and information" exist to show whether Kirkegard has "implemented or retained from prior wardens, the practice and policy of depriving prisoners of their items of property without Due Process." (*Id.*)

Judge Johnston correctly laid out the laws surrounding the application of qualified immunity. The doctrine of qualified immunity protects government

official "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). To overcome qualified immunity in this 42 U.S.C. § 1983 claim, Jannisch has the burden to show 1) that the facts make out a § 1983 violation of his federal or constitutional rights and 2) that the right at issue was clearly established at the time of the alleged misconduct. *Pearson*, 555 U.S. at 232. Here, as Judge Johnston found, the only evidence regarding Defendants Bales and Ward "is that they inventoried the property removed from Mr. Jannisch's cell." (Doc. 55 at 22.) Jannisch claims that he established in his complaint that these Defendants "removed numerous items of [his] personal religious items and issued a confiscation form listing those items." (Doc. 59 at 1.) However, assertions in pleadings are not evidence. *United States v. Zermeno*, 66 F.3d 1058, 1062 (9th Cir. 1995). It was Jannisch's obligation to present evidence to support his pleadings and he is not relieved of that obligation because of his pro se status.[1] The undisputed facts do not show that Bales or Ward physically removed the items from Jannisch's cell or physically destroyed the items, they

---

[1] Additionally, Jannisch was advised of the requirements placed upon him for opposing Defendants' summary judgment motion. (Doc. 55 at 4–5.)

merely inventoried the items taken. (Docs. 55 at 22; 46 at 4.) Jannisch's objection on this point is consequently overruled.

Kremer and Kirkegard are both supervisors. A defendant may be held liable as a supervisor under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (internal quotation marks and citation omitted). Jannisch can establish the necessary causal connection by showing that Kremer or Kirkegard set in motion "a series of acts by others" or knowingly refused to "terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.* at 1207–08.

Jannisch contends that because Kremer was given the confiscated items by "staff member Sawicki," he knew "full well that [they] would be destroyed" when he delivered them to "others." (Doc. 59 at 2.) However, Jannisch has not pointed to anything in the record which established that Kremer was personally given the confiscated property. On the contrary, the only evidence in the record merely establishes that Kremer repeatedly denied Jannisch's informal grievances regarding the property based upon the undisputed fact that Jannisch had signed a

"summary action" form which, per prison policy, precluded his grievances. This does not establish that Kremer personally obtained the property or delivered the property to others. It only establishes that Kremer denied grievance requests based upon prison policy. Accordingly, Jannisch's objection as to Kremer will be overruled.

As to Kirkegard, Jannisch contends that "insufficient evidence and information exists" to determine whether or not Kirkegard "implemented or retained from prior wardens, the practice and policy of depriving prisoners of their items of property without Due Process." (Doc. 59 at 2.) However, this objection does not actually touch upon Judge Johnston's finding that Kirkegard, as warden of Montana State Prison, had no prior knowledge of the confiscation or destruction of Jannisch's property. This overly broad argument does not establish a causal connection between Kirkegard and the confiscation and destruction of his property. Instead, this objection appears to point to the absence of a connection in the record. Discovery is closed and the connection has not been established. The objection is overruled.

As to Judge Johnston's findings on Jannisch's second religious claim, Jannisch objects to Judge Johnston's finding that Jannisch's did not suffer a substantial burden on his religious practice because the prison provided

"alternative means of obtaining [the] additional religious items" Jannisch desired. (Doc. 55 at 29.) Jannisch contends that the alternative means provided by prison policy are "hollow" and, without a showing that the policy works, "the Magistrate has just made an erroneous assumption that the policy is more [than] it actually is." (Doc. 59 at 3–4.) Jannisch provides no authority to support the contention that there needs to be evidence that the alternative means provided have been used by inmates to success. More importantly, Jannisch himself has exercised the policy and has several item requests pending. (Doc. 46 at 16–17.) Therefore, Jannisch's unsupported "hollow" argument does not show that the prison policy relied upon by Judge Johnston is a sham, that Jannisch does not have an alternative means of obtaining the items he desires for his religious practice, or that Defendants' policies have imposed a substantial burden on his religious practice. The objection is overruled.[2]

Accordingly, IT IS ORDERED that Judge Johnston's Findings and Recommendations (Doc. 55) are ADOPTED IN FULL.

---

[2] It should be noted that Jannisch mentions that "staff member Sawicki . . . should have been considered a Defendant under the liberal standards that pro se pleadings should be afforded." (Doc. 59 at 3.) This argument is not properly before the Court at this time and the Court will not allow Jannisch to try his claims out on a previously un-named defendant *after* the completion of summary judgment briefing and at this extraordinarily late stage.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment (Doc. 44) is GRANTED and the Clerk of Court is directed to close this matter and enter judgment pursuant to Federal Rule of Civil Procedure 58.

IT IS FURTHER ORDERED that Jannisch's December 4, 2017 filing (Doc. 49), to the extent construed as a motion for summary judgment, is DENIED.

IT IS FURTHER ORDERED that Jannisch's January 5, 2018 Motion (Doc. 51), to the extent construed as a motion for summary judgment, is DENIED.

IT IS FURTHER ORDERED that the Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Federal Rule of Appellate Procedure 24(a)(3)(A) that any appeal of this decision would not be taken in good faith.

DATED this 26th day of November, 2018.

/s/ Dana L. Christensen
Dana L. Christensen, Chief Judge
United States District Court